ISHEE, J.,
for the Court:
¶ 1. In 2005, a house fire began at the parsonage owned by First Apostolic Church of West Meridian in Meridian, Mississippi. Bishop Dennis Huggins, Jr. (Bishop Huggins), and his family were residing in the parsonage at the time of the fire. All family members escaped without injury with the exception of Dennis Huggins III (Dennis), who died of smoke inhalation. The church’s insurance company, GuideOne Services, LLC, doing business as GuideOne Insurance Co. (collectively GuideOne), reimbursed the church for the property damage to the parsonage and for other related coverages. Dennis’s estate filed a lawsuit in the Lauderdale County Circuit Court against GuideOne and the church for payment for the loss of Dennis’s life, and alleged the church was liable for Dennis’s death because the origin of the fire was from a source other than Dennis. GuideOne filed a motion to dismiss, which was granted. The church later filed a motion for summary judgment arguing the estate’s claim lacked merit. The circuit court granted the church’s motion. The estate now appeals the grant of the church’s motion for summary judgment. Finding no error, we affirm.
STATEMENT OF FACTS
¶ 2. Bishop Huggins and his family resided in the church’s parsonage at the time of the fire on November 6, 2005. At that time, the church maintained an insurance policy on the property through GuideOne. The policy provided commercial-property coverage and commereial-general-liability coverage. As such, the church was reimbursed for property damage to the parsonage due to the fire.
¶ 8. In the estate’s lawsuit, it demanded that GuideOne also pay the estate for the loss of Dennis’s life under the policy’s general-liability clause. However, in granting *501 GuideOne’s motion to dismiss, the circuit court agreed that the policy’s language provided no such coverage. As such, the church was left to defend against the estate’s contention that the fire was caused by the negligent acts or omissions of the church.
¶ 4. The church soon filed a motion for summary judgment claiming that no material facts existed to prove that the source of the fire was related to the acts or omissions of the church. The estate responded that it had retained an expert witness, Kirk Rosenhan, who could testify that the origin of the fire emanated from the wiring in the wall behind or near the stove located in the kitchen of the parsonage. The estate then argued that the fire occurred due to the church’s failure to inspect and repair the wiring, and that such neglect was the proximate cause of Dennis’s death.
¶ 5. The church sought to exclude Ro-senhan as an expert witness. In its motion, the church stated:
Fifteen months after the fire, [the estate] hired an expert to investigate the origin and cause of the fire. Mr. Rosen-han was unable to inspect the fire scene because the debris had been removed[,] and a new structure was under construction. Mr. Rosenhan’s inability to inspect the fire scene renders his opinions in this case speculative and unreliable under applicable law.
¶ 6. The circuit court agreed that Rosen-han should be excluded as an expert witness. Specifically, the circuit court opined that for the reasons cited by the church, Rosenhan had expressed opinions regarding causation of the fire that did not meet the Daubert[1] standard for experts. The circuit court emphasized that Rosenhan’s opinions were not based on any recognized testing or protocol applicable to fire-scene investigations and that his opinion was premised on his review of statements, an investigative report, and photographs. Since the estate was unable to provide any evidence as to the cause of the fire, the circuit court granted the church’s motion for summary judgment. The estate then timely filed an appeal challenging the circuit court’s exclusion of Rosenhan as an expert witness and the grant of summary judgment.
DISCUSSION
I. Exclusion of Rosenhan as an Expert Witness
¶ 7. We first address Huggins’s assertion that the circuit court erred in excluding Rosenhan as an expert witness based on his failure to use reliable methods in rendering his opinions and his failure to base his opinions on sufficient facts. A circuit court’s admission or exclusion of an expert witness is analyzed for abuse of discretion. Denham v. Holmes ex rel. Holmes, 60 So.3d 773, 783 (¶ 34) (Miss.2011). In determining whether the circuit court abused its discretion by excluding Rosenhan, we turn to Rule 702 of the Mississippi Rules of Evidence, which states:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) *502 the testimony is the product of reliable principles and methods, and (8) the witness has applied the principles and methods reliably to the facts of the case.
¶8. This Court recently addressed the very issue of excluding Rosenhan as an expert witness in Thompson v. Echostar Communications Corp., 89 So.3d 696 (Miss.Ct.App.2012). In Thompson, Rosen-han was hired in a products-liability case to provide expert testimony linking the cause of a significant house fire to the negligent design and manufacture of a satellite receiver by Echostar Communications Corporation (Echostar). Id. at 698 (¶ 7). The plaintiff, Katherine Thompson, had purchased the receiver in question approximately eight years prior to the house fire and had used the receiver without incident. Id. at (¶ 6). After a fire destroyed Thompson’s home, a deputy with the Mississippi Department of Insurance/State Fire Marshal’s Office investigated the scene and stated the fire caused such significant damage that it was impossible to determine the fire’s exact origin. Id. at (¶ 6) Thompson hired Rosenhan soon after filing suit against Echostar. Id. at (¶ 7). Rosenhan testified that he had inspected the scene of the fire twice and learned of a possible problem with the receiver from Thompson’s husband, Jimmy, who had stated the receiver tended to stay overly warm. Id. at 699 (¶ 9). While Rosenhan admitted he did not conduct any tests using the receiver and could not exclude other possible sources of the fire, he ultimately hypothesized that the receiver had caused the fire. Id.
¶ 9. Echostar soon filed motions requesting that the circuit court exclude Rosen-han’s opinions regarding the source of the fire and requesting summary judgment due to Thompson’s failure to show causation. Id. at 698 (¶2). The circuit court granted Echostar’s motions and Thompson appealed. Id. In affirming the circuit court’s exclusion of Rosenhan, we reiterated:
Rosenhan provided no testimony that would have assisted the court or the ultimate trier of fact in deciding whether or not the satellite receiver caused the fire. In fact, Rosenhan admitted that he was unable to rule out alternative causes of the fire. Additionally, even though Rosenhan hypothesized that the fire began with Thompson’s satellite receiver, he never tested the receiver or any similar receiver. Rosenhan’s opinion was largely drawn from his conversations with Jimmy and was not based on scientific data.
Id. at 699 (¶ 13).
¶ 10. Here, Rosenhan was hired by Huggins fifteen months after the fire occurred and was, therefore, unable to visit the fire scene during his investigation. As such, all of Rosenhan’s conclusions were based upon conversations with the Huggins family and emergency responders, as well as photographs of the scene. Rosen-han admitted that because he had no physical evidence of the electrical components in the Huggins’s home, his methodology in determining the source of the fire deviated from industry standards. Rosen-han testified that he did not conduct any independent tests or analysis to support his conclusion as to the source of the fire. Furthermore, when asked if there was any evidence of wiring or electrical problems in the home, Rosenhan stated:
None that I’m aware of in the sense that the fire marshal took a picture of the switch box, and that was about it. What ... anybody else may have done, I don’t know obviously. There’s a very limited amount of information in the photographs, and nobody else has really come up with anything with any specificity, other than we talked about the previous *503 fire, which there is discussion as to whether [someone] was eooking or [whether the problem was the] wiring. There’s plenty of — to testimony in the depositions I’ve looked at dealing with the electric system in the house, but, again, no pictures, diagrams, or physical evidence.
¶ 11. As in Echostar, Rosenhan’s conclusion in this case that faulty wiring caused the fire was based on a hypothesis garnered from conversations with the Huggins family members. Moreover, Ro-senhan conducted no physical tests or analysis to support his conclusion since all of the physical evidence related to the wiring in the home had been destroyed by the time he was retained. Such speculation regarding the allegedly faulty wiring would not have provided useful information on which a court or a jury could have determined the cause of the fire. Rosen-han clearly failed to meet the requirements necessary for his acceptance as an expert testifying as to the source of the fire. The circuit court did not abuse its discretion in excluding him as an expert witness.
II. Summary Judgment
¶ 12. We next address whether the circuit court erred in granting summary judgment in favor of GuideOne. The Mississippi Supreme Court has held that an appellate court “reviews a trial court’s grant or denial of a motion for summary judgment or a motion to dismiss under a de novo standard.” Copiah Cnty. v. Oliver, 51 So.3d 205, 207 (¶ 7) (Miss.2011) (citation omitted). Summary judgment is proper “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Palmer v. Anderson Infirmary Benevolent Ass’n, 656 So.2d 790, 794 (Miss.1995) (citing M.R.C.P. 56(c)) (citation omitted). Although this Court must view the evidence in the light most favorable to the non-moving party, the party opposing the motion “may not rest upon the mere allegations or denials of his pleadings, but his response ... must set forth specific facts showing that there is a genuine issue for trial.” M.R.C.P. 56(e). “[W]hen a party[ ] opposing summary judgment on a claim or defense ... fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial, and the moving party is entitled to judgment as a matter of law.” Galloway v. Travelers Ins. Co., 515 So.2d 678, 684 (Miss.1987).
¶ 13. At the core of his arguments, Huggins ultimately asserts a claim of negligence embodying the basic elements of duty, breach of duty, causation, and damages. Rogers v. Barlow Eddy Jenkins P.A., 22 So.3d 1219, 1222 (¶ 11) (Miss.Ct.App.2009) (citation omitted). The supreme court has held that “[i]n order to survive a motion for summary judgment in a negligence action[,] the plaintiff must put on evidence showing that the defendant breached a duty of care and that [the] breach proximately caused his injury.” Palmer, 656 So.2d at 797. Summary judgment is not avoidable based on expert opinions derived from “guess, speculation, or conjecture.” Rogers, 22 So.3d at 1225 (¶ 21).
¶ 14. The proper exclusion of Rosenhan as an expert witness eliminated Huggins’s ability to provide evidence that faulty wiring proximately caused the fire. The only other definitive witnesses Huggins could present to testify regarding the home’s electrical system were persons who lived in the home and witnessed the home’s lights flickering, as well as an electrician who allegedly suggested the home needed rewiring in 2003 or 2004. However, none *504 of the remaining witnesses could actually provide a causal link between the home’s electrical system and the fire. As such, Huggins’s claim of negligence fails as a matter of law. The circuit court did not err in granting summary judgment.
¶ 15. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. RUSSELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).